UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN BUTLER, | |
| Plaintiff, | CIVIL ACTION NO. 3:24-cv-01455 |
| v. | (SAPORITO, J.) |
| MS. MORAZCKA, *et al.*, | |
| Defendants. | |

MEMORANDUM

Plaintiff John Butler, incarcerated at the State Correctional Institute at Manahoy ("SCI-Manahoy"), filed this civil rights action pursuant to 42 U.S.C. § 1983, and seeks leave to proceed *in forma pauperis*. In brief, Butler alleges he was denied inadequate medical care prior to two suicide attempts, received a disciplinary sanction without proper notice of the charge, and is being denied a medically necessary placement on the bottom tier of the prison. The Court denies Butler's request for preliminary injunctive relief related to the prison placement, but permits him to proceed against defendant Ms. Morazcka on an Eighth Amendment claim for deliberate indifference to a serious medical need.

I. BACKGROUND

Butler's complaint (Doc. 20) alleges[1] as follows: On July 15, 2024, Butler was taken to the Restricted Housing Unit ("RHU"). While in the "strip-cage," Butler informed Defendant Lotwick (a non-medical officer) and Defendant Morazcka (a psychologist) that he was "feeling suicidal." Morazcka asked Lotwick: "What do you want to do?" Lotwick replied: "Put him in the cell and see what happens!"

While in his cell, Butler attempted to hang himself with a sheet. For reasons not explained in the complaint, he was sprayed with OC spray after this suicide attempt. He was taken to a Psychiatric Observation Cell ("POC") where another defendant officer, identified as Lt. John Doe, gave Butler "regular clothes," rather than a garment normally assigned to someone on suicide watch. Lt. Doe also attempted to give Butler more sheets, which Butler refused.

In the POC, Butler "repeatedly asked to see a psychologist and was denied." Finally, a nurse identified as John Doe, who falsely "claimed to

---

[1] For clarity, the Court's summary incorporates certain facts alleged in Butler's initial motion seeking injunctive relief (Doc. 1). These facts do not affect the Court's analysis of whether the complaint itself states a claim for relief.

be a licensed psychologist," came to speak to Butler. At some point after this exchange, Butler attempted to hang himself with the "regular" clothing. He pressed the emergency call button, and Nurse Doe arrived, took Butler's clothing and mattress, and gave him a "suicide smock."

On July 24, 2024, having been released from the POC, Butler was called to a hearing on a misconduct charge. Butler's description of the hearing is unclear, but he alleges that the hearing examiner, defendant Dennis Wiederhold, presented a charge premised on Butler "covering his door," presumably during the first suicide attempt. However, Butler had not received written notice of that charge and was unaware of it. Wiederhold said that Butler had been served with the charge on the evening of July 15, but Butler was in the POC at that time. Ultimately, Wiederhold "'falsely' claimed that [Butler] plead[ed] guilty" to the charge.

At some point after this hearing, Butler was "moved to the top tier[2]." Butler had been granted "bottom tier" status at SCI-Albion, in response to a grievance he filed in April 2017. At his current prison, SCI-

---

[2] The Court infers that the "top tier" refers to placement on a higher floor of the prison, rather than a lower floor where Butler could avoid walking up and down the stairs. *See Butler v. Sissem*, No. 1:18-CV-00141-RAL, 2022 WL 507525 (W.D. Pa. Feb. 18, 2022) (case filed by Butler relating to his "bottom tier status").

Manahoy, Officer John Doe told Butler: "We contacted medical, you're not bottom tier, that grievance got shredded." Butler "began notifying staff," including defendants Banta and Jankorski, that he should not be on the top tier because he was taken to a hospital on July 12 after passing out, and had been experiencing "dizzy spells" since being sprayed with OC spray. Banta told Butler she had spoken with medical, that Butler was not bottom-tier status, and therefore it "did not matter" that the grievance had been shredded.

Butler asserts claims under the Eighth Amendment for deliberate indifference to his serious medical needs against Morazcka, Lotwick, Nurse Doe, Lt. Doe, Officer Doe, Banta, and Jankorski, and a claim under the Fourteenth Amendment for denial of due process against Wiederhold.[3]

---

[3] Two other claims merit brief discussion. Butler asserts that he files his complaint "under the Americans with Disabilities Act." However, he has not alleged that he was discriminated against by reason of a disability, so the ADA does not apply here. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). He also attempts to raise a First Amendment claim because he was temporarily denied access to the prison's grievance process, but "prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005).

## II. LEGAL STANDARDS

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *id.* § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a

motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Butler brings this action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

III. DISCUSSION

### A. Deliberate Indifference Claims

Butler asserts claims under the Eighth Amendment against seven defendants based on their deliberate indifference to his serious medical needs. To succeed on these claims, a plaintiff must "make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

There is some ambiguity as to whether the claims stemming from Butler's suicide attempts should be interpreted as deliberate indifference to a serious medical need, or deliberate indifference to a risk of suicide.[4]

---

[4] *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (plaintiffs "wished to pursue a more general claim [that prison officials] were deliberately indifferent to [the prisoner's] serious need for adequate mental healthcare" but did not "directly claim that the prison officials should be held liable for failing to prevent [his] suicide"); *cf. Myers v. Clinton Cnty. Corr. Facility*, No. 3:21-CV-00867, 2022 WL 773916, at *2 (M.D. Pa. Feb. 22, 2022) (reasoning that a claim from an unsuccessful suicide attempt should be seen as deliberate indifference to a serious medical need), report and recommendation adopted in part, 2022 WL 738740 (M.D. Pa. Mar. 11, 2022).

The latter claim requires that Butler allege a "particular vulnerability to suicide," meaning "a strong likelihood, rather than a mere possibility," that he would attempt it; (2) that "the prison official knew or should have known" of that vulnerability; and (3) "the official acted with reckless or deliberate indifference, meaning something beyond mere negligence." *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 WL 2874283, at \*2 (3d Cir. June 7, 2024) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017)). Accordingly, the Court considers the standards for both claims where appropriate.

Butler alleges that Morazcka, the attending psychologist, was deliberately indifferent because she left Butler alone in his cell after he told them he was "feeling suicidal," and "failed to provide any treatment." The question of whether Butler presented a particular vulnerability to suicide must be "assessed based on the totality of the facts presented." *Palakovic*, 854 F.3d at 230. Here, the complaint is devoid of any facts from which Morazcka could infer that the statement that he was "feeling" suicidal presented a "strong likelihood" that he would attempt suicide. The complaint does not indicate that Butler had a history of suicidal attempts or threats, or if he did, that Morazcka was aware of them. *See*

*Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (where a plaintiff had no known suicide attempts, a defendant was not deliberately indifferent when she "left [the plaintiff] alone for 45 minutes . . . despite [his] threats to commit suicide. These allegations do not amount to recklessness or deliberate indifference but rather, at most, possible negligence.") (per curiam); *see also McCullough v. Clinton Cnty.*, No. 4:23-CV-00171, 2024 WL 1468359, at *4-5 (M.D. Pa. Apr. 4, 2024) (listing cases with patient histories indicating a strong vulnerability to suicide).

However, Butler's allegation that Morazcka "failed to provide any treatment," considered with Morazcka's remark to Lotwick, supports an inference that Morazcka declined to medically evaluate Butler or offer medical care in any form. *Cf. Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 111-12 (3d Cir. 2007) (where a counselor declined to refer a prisoner to a psychiatrist, the counselor's "steps to evaluate and treat [the prisoner's] mental illness" precluded any finding of deliberate indifference). It is reasonable to infer that Morazcka, a psychologist, was present during Butler's transfer to the RHU because she was in some way responsible for Butler's mental health care at that time. Viewing all these facts in the light most favorable to Butler, the complaint states a

claim against Morazcka for deliberate indifference to Butler's "serious mental health issues," *Palakovic*, 854 F.3d at 226, even if Morazcka did not perceive a "strong likelihood" that Butler would attempt suicide.

Butler also alleges that Lotwick, the non-medical officer, was deliberately indifferent because he "interfered with a medical/mental health emergency" and "ordered" Morazcka to put Butler in his cell. However, nothing in the complaint indicates that Lotwick "interfered with" Butler's health care or undermined the medical staff. Although Lotwick's alleged remark ("put him in the cell and see what happens") was unpleasant, his inaction does not demonstrate deliberate indifference, given that a medical provider was already present. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023) (declining to recognize a pre-trial detainee's constitutional right for officers to intervene in the denial of adequate medical care); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Next, Butler asserts a claim against Lt. John Doe, who gave Butler "regular clothes" and attempted to give him sheets after Butler had previously attempted to hang himself with a sheet. However, Butler does not allege that this non-medical officer knew about his prior suicide

attempt, nor can that knowledge be inferred from the fact that Butler was in a POC. *See, e.g., Mincy v. Klem*, 277 F. App'x 239, 242 (3d Cir. 2008) (noting that POCs are used to monitor inmates on hunger strikes, among other purposes). The bare allegations against Lt. Doe do not indicate that he knew that Butler was suicidal, and therefore, the fact that he gave Butler clothes and a sheet does not itself demonstrate deliberate indifference.

Butler pursues another theory of liability against Lt. Doe: that he "refused to contact someone from psychology, following the incident." However, Butler never alleges that he asked Lt. Doe to see someone from psychology. Rather, he generally alleges that "while in the P.O.C., [Butler] repeatedly asked to see a psychologist and was denied," and that eventually a nurse arrived[5] rather than the psychologist he had requested. Even if there was a basis to attribute this delay to an officer (rather than the medical staff itself), these allegations do not support an inference that Lt. Doe was to blame.

---

[5] Butler also appears to assert an Eighth Amendment claim against Nurse Doe on the basis that he misrepresented his credentials to Butler. Absent some allegation that the care offered to Butler evinced deliberate indifference, this kind of allegation does not give rise to an Eighth Amendment claim.

### B. Tier Status Claims

Next, Butler attempts to state Eighth Amendment claims based on non-medical officers Banta, Doe, and Jankorski refusing to move him to the bottom tier of the prison. The complaint does not indicate deliberate indifference; to the contrary, in response to Butler's request, Banta contacted the medical staff and allegedly confirmed that Butler had not received bottom tier status. Butler seems to contend that regardless of what the medical staff said, the officers needed to accept Butler's own reports about the status he needed, because he had received it at a different prison in 2017. However, it was not deliberate indifference for the officers to rely on the present judgment of the medical staff as to where Butler should be placed. *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison.").

Butler has filed two motions seeking preliminary injunctive relief restoring him to the bottom tier. (Docs. 1, 19). On a request for preliminary injunctive relief, courts consider four factors: (1) whether there is a "reasonable probability" of success on the merits, (2) whether

denial would cause irreparable harm to the plaintiff, (3) whether the relief would cause greater harm to the non-moving party, and (4) whether the relief would be in the public interest. *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102-03 (3d Cir. 2022). The first two factors are "prerequisites that the moving party must establish." *Id.* (citing *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020)).

Butler has not demonstrated a reasonable probability of success on the merits. In so finding, the Court has also considered related allegations in various filings, including: that Butler believes certain officers are escorting him downstairs too quickly (Doc. 13); that a doctor told him the reason he previously passed out was that he has "restrict[ive] lung disease" (Doc. 17); and that he has suffered two heart attacks, and fell down the stairs in February 2018 (Doc. 19). None of these allegations indicate that he is being denied medical care for this issue, that the medical staff refuses to consider his entitlement to bottom tier status, or that any defendant has been deliberately indifferent to his serious medical needs. Rather, they suggest that Butler has either not requested medical evaluation for this status, or if he has, disagrees with

the assessment of the medical staff. *See also* (Doc. 16, at 11 (response to Butler's grievance, indicating that "[y]ou have to sign up for sick call to be evaluated for this status")).

Because Butler's allegations (including those outside of the complaint) do not suggest a plausible claim for relief regarding his entitlement to bottom tier status, he has not shown a likelihood of success on the merits, and preliminary injunctive relief is not appropriate. *See, e.g., Ivester v. Sweeny*, No. 19-CV-16559-FLW-DEA, 2019 WL 4220502, at *6 (D.N.J. Sept. 5, 2019); *Myers v. Pennsylvania Dep't of Corr.*, No. 1:18-CV-00940, 2018 WL 3093375, at *6 (M.D. Pa. June 22, 2018).

### C. Due Process Claim

Butler also alleges a Fourteenth Amendment Due Process claim against defendant Wiederhold, based on the disciplinary proceedings relating to Butler "covering his door." "Due process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive

segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486); *see Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest.").

Butler alleges he received written notice of a charge, but it was not the charge that Wiederhold ultimately presented at the hearing. He alleges that Wiederhold "falsely claimed that [Butler] had plead[ed] guilty" to this charge. But the operative complaint does not state what punishment Butler received, and therefore, does not support an inference that any deprivation imposed an "atypical and significant hardship." *Griffin*, 112 F.3d at 706. The Court notes that in another filing, Butler claimed that Wiederhold "gave him 30 days," which appears to refer to a 30-day period in the RHU. For completeness, the Court notes that this allegation would not sustain a claim because courts have repeatedly held that disciplinary segregation for a limited period does not implicate a liberty interest. *See, e.g., Fantone v. Herbik*, 528 F. App'x 123, 128-29 (3d

Cir. 2013) (35 days in isolation); *Bacon v. Luzerne Cnty.*, No. 3:23-CV-1699, 2024 WL 1837217, at *6 (M.D. Pa. Apr. 26, 2024) (46 days in the RHU).

### D. Legal Mail Issues/Request to Appoint Counsel

Finally, Butler has filed several motions alleging that the prison is interfering with his legal mail. It appears that Butler tried to mail a series of documents for filing in September 2024, but they were not received by the Court until various dates in October 2024. Other than Butler's own allegations that the mail was intentionally withheld, the motions do not present any evidence of improper intent.[6] There is no indication that the delay was the result of a "pattern and practice," as would be required for a First Amendment claim of interference with legal mail. *See Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). The Clerk will be directed to send Butler a copy of the docket in this case, to ensure he

---

[6] Butler argues that the prison's improper treatment of his mail is substantiated by a judicial order in a case in the Western District of Pennsylvania. *See Butler v. Pierson et al.*, No. 1:22-cv-00091-SPB, Doc. 96 (W. D. Pa. Sept. 11, 2024). At a telephonic hearing in that case, Butler alleged that his mail was being "intercepted." The court directed defense counsel to "contact [the Pennsylvania Department of Corrections] regarding [Butler's] mailing issues." A review of the docket in that case does not reveal any subsequent findings or orders relating to mail issues.

is aware of all prior filings sent and received.[7]

Butler requests appointment of counsel based on the alleged interference with mail. (Doc. 13). As described above, Butler's allegations do not justify any further relief related to mail issues at this stage. To the extent intended as a request for counsel more generally, the motion will be denied without prejudice.

A prisoner has no constitutional or statutory right to appointment of counsel in a civil case. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Under the *in forma pauperis* statute, however, a federal court may request that an attorney represent an indigent person on a *pro bono* basis. *See* 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir.

---

[7] Most recently, Butler has alleged that checks sent to the Clerk for copies have been mishandled. (Doc. 21). A check for $3.00, purportedly included with a motion he mailed on September 4, 2024, was not included with that mailing. *See* (Doc. 11). The Clerk's office indicates that the check was never received, so it is unclear what happened to the check. However, Butler's prisoner account statement indicates that money for the check was ultimately credited back to him on September 18, 2024. (Doc. 23, at 3).

Butler then filed a renewed request for copies. The Clerk's office indicates that payment for these copies was received on October 22, 2024, and the relevant copies were mailed to Butler on that date.

1993). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99. If the plaintiff overcomes this threshold hurdle, the court considers the following factors in evaluating the request for counsel:

    1.    the plaintiff's ability to present his or her own case;

    2.    the difficulty of the particular legal issues;

    3.    the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

    4.    the plaintiff's capacity to retain counsel on his or her own behalf;

    5.    the extent to which a case is likely to turn on credibility determinations, and;

    6.    whether the case will require testimony from expert witnesses.

*Id.* at 499 (citing *Tabron*, 6 F.3d at 155-57).

Here, the legal issues involved do not appear to be complex, and the plaintiff has demonstrated an ability to adequately present his own case. At this early stage, there is nothing to suggest an involved factual

investigation, decisive credibility determinations, or expert testimony. Accordingly, Butler's request will be denied without prejudice.

## IV. CONCLUSION

Butler will be granted leave to proceed on a claim against Defendant Morazcka for deliberate indifference to his serious medical need, his remaining claims will be dismissed, and the relief sought in his remaining motions will be denied. An appropriate order follows.

Dated: November 1, 2024　　　　　*s/Joseph F. Saporito, Jr.*
　　　　　　　　　　　　　　　　JOSEPH F. SAPORITO, JR.
　　　　　　　　　　　　　　　　United States District Judge